60 P.3d 663 (2003)
114 Wash.App. 805
In re the Marriage of Duncan W. HAMMACK, Appellant,
v.
Jeannette B. HAMMACK, Respondent.
No. 27992-4-II.
Court of Appeals of Washington, Division 2.
January 3, 2003.
*664 Michael T. Schein, Reed, Longyear, Malnati, Ahrens & Strickland, PS, Seattle, WA, for Appellant.
Clayton Lee Spencer, Spencer & Sundstrom PLLC, Vancouver, WA, for Respondent.
BRIDGEWATER, J.
Duncan and Jeannette Hammack's dissolution gave a disparate share of the couple's property to Duncan in exchange for Jeanette not being required to pay child support for their remaining minor child. We uphold the trial court's vacation of the dissolution decree concerning the property settlement under CR 60(b)(11) as an extraordinary circumstance. We hold that the agreement for Duncan to receive a disparate share of the property was not a prepayment to satisfy child support, but rather an unenforceable attempt to avoid child support. We affirm and remand for a hearing regarding an appropriate property division.

FACTS
At the time of their dissolution in 1999, Duncan and Jeanette Hammack had only one child who was still a minor. Under their separation agreement, Duncan received property worth approximately $362,000, and Jeanette received property worth approximately $15,000. Both parties signed this separation agreement on September 16, 1999. Duncan claimed that his attorney had given the agreement to Jeanette along with a letter encouraging her to seek independent counsel. Jeanette chose not to seek independent counsel. The trial court issued the dissolution decree, which incorporated the separation agreement, on December 23, 1999.
On November 28, 2000, Jeanette filed a petition to modify the parenting plan, specifically the transportation arrangements. Duncan moved for an award of child support and the court entered a ruling on January 9, 2001, allowing Duncan to seek child support. A hearing on this motion was held on April 9, 2001. Although the parties gave different reasons for the original disparate distribution, the court found that this division was based on an oral agreement exempting Jeanette from any future child support obligations.[1] During the hearing, Duncan testified that his attorney likely knew that this child support avoidance was unenforceable. On April 11, 2001, Judge Roger Bennett set child support to be paid by Jeannette.
On June 7, 2001, Jeanette filed a timely CR 60(b) motion to vacate the final property settlement based on her claims that Duncan and his attorney misrepresented the enforceability of bargaining away child support obligations. Because this was invalid, Jeanette *665 also claimed that the agreement lacked consideration. Judge Diane Woolard granted the motion to vacate on September 28, 2001. Duncan appealed.

ANALYSIS
It is well settled that parents cannot agree to waive child support obligations. In re Marriage of Fox, 58 Wash.App. 935, 937 n. 3, 795 P.2d 1170 (1990). Such agreements are against public policy and do not affect subsequent requests for child support. In re Marriage of Pippins, 46 Wash.App. 805, 808, 732 P.2d 1005 (1987). Courts have found such agreements unenforceable even if in a final order agreed upon by the parties and not appealed. Pippins, 46 Wash.App. at 808, 732 P.2d 1005. This is based on the principle that child support is held in trust by the parents for the children and, hence, parents have no right to waive their children's right to that support. Pippins, 46 Wash.App. at 808, 732 P.2d 1005.
But a disparate division of property may satisfy one spouse's child support obligations. Holaday v. Merceri, 49 Wash.App. 321, 326, 742 P.2d 127, review denied, 108 Wash.2d 1035, ___ P.3d ___ (1987). In Holaday, the lower court found that the parties intended the disparate division to satisfy child support. Holaday, 49 Wash.App. at 326, 742 P.2d 127. The trial court that set Jeanette's child support here did not find that to be the case and found the following:
Case law allows a court to determine whether or not the parties agreed that a disproportionate property split can be treated as an "advance payment" on child support, and appropriate credit given. The evidence is [sic] this case, however, fails to so indicate. No effort was made to quantify the potential child support exposure over the term of Dale's minority. Nor was the community interest given up by Respondent quantified, therefore, no credit can be calculated. Instead, what the parties did was to prospectively and completely deal away Respondent's child support obligation, which as Petitioner's attorney knew, was not permitted.
Clerk's Papers (CP) at 97.
In this case, after one court had set the child support, a second trial court vacated the dissolution decree with respect to the final property distribution. A motion to vacate a property settlement is within the discretion of the trial court. In re Marriage of Curtis, 106 Wash.App. 191, 196, 23 P.3d 13, review denied, 145 Wash.2d 1008, 37 P.3d 290 (2001).
Jeanette asserted CR 60(b)(11) as a basis for moving to vacate the property settlement contained in the dissolution decree. This rule provides that:
(b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
....
(11) Any other reason justifying relief from the operation of the judgment.
CR 60(b)(11).
The operation of CR 60(b)(11) is "confined to situations involving extraordinary circumstances not covered by any other section of the rule." State v. Keller, 32 Wash.App. 135, 140, 647 P.2d 35 (1982). On appeal, Duncan argues that Jeanette failed to demonstrate that there were "extraordinary circumstances" warranting an order vacating the decree. Br. of Appellant at 22-25. Jeanette counters that courts have recently expanded what they consider "extraordinary circumstances" and that the court's order was proper. Br. of Resp't at 9-12.
A dissolution decree may be vacated for extraordinary circumstances to overcome a manifest injustice. In re Marriage of Jennings, 138 Wash.2d 612, 625-26, 980 P.2d 1248 (1999); In re Marriage of Burkey, 36 Wash.App. 487, 490, 675 P.2d 619 (1984). The extraordinary circumstances "`must relate to irregularities extraneous to the action of the court'." In re Marriage of Tang, 57 Wash.App. 648, 655-56, 789 P.2d 118 (1990) (quoting In re the Marriage of Yearout, 41 Wash.App. 897, 902, 707 P.2d 1367 (1985)).
*666 Errors of law may not be used to vacate a judgment. In re Marriage of Thurston, 92 Wash.App. 494, 499, 963 P.2d 947 (1998), review denied, 137 Wash.2d 1023, 980 P.2d 1282 (1999).
We compare this case with two other cases which were found to contain extraordinary circumstances. First, we look to In re Marriage of Thurston, 92 Wash.App. at 494, 963 P.2d 947. In Thurston, the appellate court affirmed the trial court's vacation of the property settlement because the husband failed to meet a material condition supporting the property division. Thurston, 92 Wash.App. at 503, 963 P.2d 947. Secondly, the case of Knies v. Knies, 96 Wash.App. 243, 979 P.2d 482 (1999), shows the court's willingness to expand "extraordinary circumstances." Br. of Resp't at 11. In Knies, the court modified the dissolution decree when the husband was placed on disability status and received disability pay, which he denied to the wife. Knies, 96 Wash.App. at 251, 979 P.2d 482. The court found that the husband was circumventing the property settlement agreement and was denying the wife's one-half interest in the husband's pension, making this an extraordinary circumstance. Knies, 96 Wash.App. at 250, 979 P.2d 482.
A contract that is either illegal or violates public policy is void and unenforceable. Fluke Corp. v. Hartford Accident & Indem. Co., 102 Wash.App. 237, 245, 7 P.3d 825 (2000), aff'd, 145 Wash.2d 137, 34 P.3d 809 (2001); Sherwood & Roberts-Yakima, Inc. v. Leach, 67 Wash.2d 630, 636, 409 P.2d 160 (1965). A contract that "seriously offends law or public policy" is "void ab initio" or "null from the beginning[.]" Helgeson v. City of Marysville, 75 Wash.App. 174, 180 n. 4, 881 P.2d 1042 (1994) (citing BLACK'S LAW DICTIONARY 1574 (6th ed.)). An instrument that is "intimately connected" to an illegal instrument is likewise tainted and unenforceable. Sherwood, 67 Wash.2d at 637, 409 P.2d 160. In an illegal contract, there is no obligation to perform even if the other party has performed or received a benefit from the bargain. Cascade Timber Co. v. N. Pac. Ry. Co., 28 Wash.2d 684, 708, 184 P.2d 90 (1947).
Based on the above principles, it is quite clear that a contract or agreement that violates public policy or law is void and unenforceable. It is well settled that an agreement to waive child support is against public policy. Because the trial court found that the basis of the property division agreement was a term that violates public policy, the agreement was void and unenforceable from its inception. Here, there were none of the considerations found in Holadaythe calculation of an appropriate child support sum, the preservation of future support, or the quantifying of the value of the property that Jeanette relinquished in lieu of paying future child support. Thus, the agreement was void for being against public policy and unenforceable. We hold this to be an extraordinary circumstance permitting vacation of the property settlement agreement. Therefore, the division of property cannot be enforced, and the trial court that set it aside did not err.
Duncan asks for an evidentiary hearing and points out that under CR 52(a)(2)(B), the court must issue findings and conclusions in a final decision in a divorce proceeding. This, however, is not what is at issue here. This is an appeal from an order vacating a prior dissolution decree and property settlement agreement under CR 60(b). There is no authority that CR 60(b) has a similar requirement for findings and conclusions. The decision to vacate was not a final decision in a divorce proceeding under CR 52(a)(2)(B); rather, it is a decision vacating the decree and establishing that the property division will be decided at a later time. Nothing in the record indicates that there has been a subsequent dissolution decree with a property division. Thus, the case should be remanded for the trial court to make this determination.
Jeanette has also requested attorney fees. She makes this request in the last sentence of her conclusion in her brief. But a separate section in a brief devoted to the issue of fees is required by RAP 18.1(b) and such a requirement is mandatory. Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 710 n. 4, 952 P.2d 590 (1998) (citing Phillips Bldg. Co. v. An, 81 Wash.App. 696, 705, 915 P.2d 1146 (1996)). A request for attorney fees and costs in the last line of the conclusion in a brief is not sufficient.
*667 Wilson Court, 134 Wash.2d at 710, 952 P.2d 590. Thus, Jeanette is not entitled to fees in this matter.
Affirmed and remanded for an appropriate property division.
We concur: ARMSTRONG, J., and HUNT, C.J.
NOTES
[1] The trial judge's finding was as follows: "I am convinced, by a preponderance of the evidence, however, that the consideration for the no-support clause was Respondent's giving up approximately $173,500.00 in community property, less one-half the community's interest in her pension/retirement benefit. I don't, however, know what that asset was worth. Therefore, there may have been a failure of consideration. Petitioner's promise to not seek child support was illusory and possibly deceptive." Clerk's Papers (CP) at 97-98.